BART M. DAVIS, ID STATE BAR NO. 2696
UNITED STATES ATTORNEY
WILLIAM M. HUMPHRIES, WA STATE BAR NO. 44452
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
EMAIL: Bill.Humphries@usdoj.gov

Attorneys for United States of America on behalf of
the Department of Housing and Urban Development

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THE ESTATE OF HILARY F. GODDARD, DECEASED, THE PERSONAL REPRESENTATIVE OF SUCH ESTATE, AND THE UNKNOWN HEIRS, DEVISEES, SUCCESSORS IN INTEREST AND CLAIMANTS TO THE ESTATE OF HILARY F. GODDARD, DECEASED; GABRIEL JOSEPH ANDREW; RAYMOND PAUL ANDREW JR.; THE ESTATE OF ABEL ANTHONY ZEPEDA, DECEASED, THE PERSONAL REPRESENTATIVE OF SUCH ESTATE, AND THE UNKNOWN HEIRS, DEVISEES,  SUCCESSORS IN INTEREST AND CLAIMANTS TO THE ESTATE OF ABEL ANTHONY ZEPEDA, DECEASED; and THE COEUR D'ALENE TRIBE,<br><br>　　　　Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

**VERIFIED COMPLAINT - 1**

The United States of America, on behalf of the United States Department of Housing and Urban Development ("HUD") and the Secretary of HUD, through the United States Attorney and the undersigned Assistant United States Attorney for the District of Idaho, hereby states and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. § 1345 because the United States of America is the Plaintiff.  The United States of America, on behalf of HUD and the Secretary of HUD, seeks to foreclose a loan made under the provisions of Section 184 of the Housing and Community Development Act (12 U.S.C. § 1715z-13a) and secured by a deed of trust (also referred to as a mortgage) on a leasehold interest on real property leased to Hilary F. Goddard. Such real property is real property held in trust by the United States for the Coeur d'Alene Tribe.

2.      Hilary F. Goddard, deceased, ("Borrower") was an American Indian, a member of the Coeur d'Alene Tribe, and at the time relevant to this case was a resident of Worley, Idaho. Defendant passed away on or about July 20, 2006.  A copy of Defendant's obituary is attached hereto as Exhibit A and made a part hereof.  Because Borrower is deceased, her estate, the Estate of Hilary F. Goddard, is listed as a defendant.

3.      Abel Anthony Zepeda, deceased, at the time relevant to this case was a resident of Worley, Idaho.  He passed away on or about March 11, 2010.  A copy of Mr. Zepeda's obituary is attached hereto as Exhibit B and made a part hereof.  He was married to Borrower at the time of Borrower's death.  Because Idaho is a community property state, because 25 U.S.C. § 2206(a)(A)(i) provided Mr. Zepeda a life estate in Borrower's interest in trust real property upon Borrower's death (intestate), and because Mr. Zepeda is deceased, the Estate of Abel Anthony Zepeda is listed as a defendant.

**VERIFIED COMPLAINT - 2**

4.     Gabriel Joseph Andrew and Raymond Paul Andrew, Jr. are the sons of Borrower. They are likely heirs to Borrower and had a remainder interest in any of Borrower's interest in trust real property at her death.  Thus, they may have an interest in the real property subject to this Verified Complaint.

5.     The other heirs or devisees, if any, of Borrower and/or Mr. Zepeda are also listed as defendants in this case, although they are unknown and likely do not have an interest in the real property at issue in this Verified Complaint.

6.     Defendant Coeur d'Alene Tribe (the "Tribe"), is a federally-recognized tribe under the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 479a-1.  *See also* 79 FR 4748-02, 2014 WL 296753 (January 29, 2014) (notice listing tribes).  The Tribe is a defendant because it is the lessor of the real property at issue, as discussed below, and had a right of first refusal.

## CLAIM FOR FORECLOSURE OF LEASEHOLD DEED OF TRUST

7.     The Tribe, as lessor, entered into a lease agreement entitled "Osprey Spirit II Housing Development Residential Lot Lease, Lease No.: OS 00-2" (the "Lease") with a lessee, Toni LaDeaux, with an effective date of April 6, 2000.  The term of the Lease is fifty years.  The Lease was approved by the Bureau of Indian Affairs on May 10, 2000.  Under the Lease, the Tribe leased land in the Coeur d'Alene Indian Reservation, County of Kootenai, State of Idaho, described as follows, to the lessee:

> Lot Number 19 of the Osprey Spirit II Housing Development at 9195 W. Bald Eagle Lane as described in the Plat of Osprey Spirit II; which is a lot of 32,917 square feet located in the NW ¼ of the NW ¼ and the NE ¼ of the NW 1/1 of Sec. 25; T.47N, R.5W, B.M., on the Coeur d'Alene Indian Reservation within Kootenai County, Idaho; on trust lands of the Coeur d'Alene Indian Tribe.

As stated in the Lease, the purpose of the lease is for members of the Tribe to obtain "financing to construct, improve and/or maintain a dwelling and related structures on the leased premises."

**VERIFIED COMPLAINT - 3**

The Lease contemplates the involvement of HUD in the financing and discusses potential foreclosure. The underlying property is held in trust by the federal government for the Tribe.

8. The Lease allows for assignment. The Lease was assigned to Borrower on June 20, 2001. A copy of the Assignment of Residential Lot Lease Number OS 00-2, together with the Lease is attached hereto as Exhibit F and made a part hereof.

9. On or about September 11, 2001, Borrower, for value received, made, executed and delivered to Wells Fargo Home Mortgage, Inc., a certain promissory note evidencing a loan made to her whereby she promised to pay to the order of Wells Fargo Home Mortgage, Inc., the principal sum of $66,634.00 plus interest at the rate of 7.500% per annum. A copy of the note is attached hereto as Exhibit C and made a part hereof.

10. As part of the security for the note, the Borrower made, executed, and delivered to Wells Fargo Home Mortgage, Inc. a leasehold mortgage in the form of a deed of trust dated September 11, 2001 ("Deed of Trust"). A true and correct copy of the Deed of Trust, including the signed Rider for Section 184 Mortgage, is attached hereto as Exhibit D and made a part hereof. The Deed of Trust was recorded in the Portland Title Plant of the Bureau of Indian Affairs (BIA), Portland, Oregon, on October 1, 2002. A true and correct copy of the BIA Title Status Report dated April 17, 2012 is attached hereto as Exhibit E and made a part hereof.

11. The Deed of Trust encumbers the following described real property:

> Lot Number 19 of the Osprey Spirit II Housing Development at 9195 W. Bald Eagle Lane as described in the Plat of Osprey Spirit II, which is a lot of 32,917 square feet located in the NW ¼ of the NW ¼ and the NE ¼ of the NW1/4 of Sec. 25; T. 47N, R.5W., B.M., on the Coeur d'Alene Indian Reservation within Kootenai County, Idaho, on trust lands of the Coeur d'Alene Indian Tribe, Commonly known as: **9195 W. Bald Eagle Lane, Worley, ID 83876**

**VERIFIED COMPLAINT - 4**

12.     On April 5, 2012, Wells Fargo Bank, N.A. (successor by merger to Wells Fargo Home Mortgage, Inc.) assigned the Deed of Trust to the Secretary of HUD.  A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit G and made a part hereof. The Assignment is noted in the Title Status Report included as Exhibit E.

13.     The promissory note provides that failure to pay any of the debt when due constitutes default, and the Plaintiff may accelerate the debt.  Exhibit C, para. 6.  The Deed of Trust provides that if there is a default in the performance or discharge of any obligation in the Deed of Trust or the promissory note, the Plaintiff, after notice, may accelerate the note and foreclose the Deed of Trust as provided thereunder or by law.  Exhibit D, para. 22.

14.     Borrower defaulted on the promissory note and Deed of Trust by failing to pay principal and interest when due.  On May 3, 2009, Wells Fargo sent Borrower a letter informing Borrower that she was in default.  Wells Fargo informed Borrower that if Borrower did not cure the default within thirty days, the amount due under the note would be accelerated and foreclosure would likely follow.  A true and correct copy of the letter notifying the Borrower of the default and acceleration of the debt is attached as Exhibit H.

15.     Because of Borrower's default, Plaintiff is entitled to have the Deed of Trust on the leasehold interest in the real property foreclosed and the leasehold interest sold in the manner prescribed by law and the proceeds applied to payment of the amounts owed by Borrower to Plaintiff.

16.     No other action at law or proceeding in equity or otherwise has been commenced or is now pending for the foreclosure of the Deed of Trust or the collection of the debt secured thereby.

17.     There is now due on the promissory note the principal sum of $59,334.42 plus interest of $16,587.60 through October 6, 2004, for a total due of $75,922.02.

**VERIFIED COMPLAINT - 5**

18.     Plaintiff is entitled to all proper costs incurred by Plaintiff from the time this Verified Complaint is filed to the conclusion of this action.  The note and Deed of Trust provide that the Plaintiff may at any time pay any amounts required to be paid by the Borrower and not paid by her when due, as well as any costs and expenses for the preservation, protection, or enforcement of the Plaintiff's lien as advanced for the account of the Borrower, and that all such amounts shall bear interest at the rate provided in the promissory note secured.  During this action Plaintiff may need to make such advances.

19.     This action is limited to foreclosing on the leasehold interest in real property that secured the debt; such an *in rem* proceeding is not subject to the statute of limitations in 28 U.S.C. § 2415(a).  Plaintiff is not seeking a deficiency judgment and thus will bid only the debt balance on the date of sale.

20.     Under the Assignment of Residential Lot Lease between the Tribe and Borrower (Exhibit F), the Tribe may claim a right of first refusal to Borrower's leasehold interest in the property upon payment of all sums in arrears, and either payment of the balance of the loan or assumption of the mortgage.  Said right of first refusal may be exercised within 30 days after notice in writing from the lender of the Borrower's default; however, Borrower has 15 days from the date of the notice to cure default.  By letter dated July 9, 2014, a copy of which is attached hereto as Exhibit I and made a part hereof, the Coeur d'Alene Tribe was notified of Borrower's default and has declined to exercise said right of first refusal.

21.     Plaintiff seeks to extinguish any interest by the Defendants, including any community property or successor interest possibly obtained by Borrower's husband Abel Anthony Zepeda, Borrower's sons, and any interest possibly obtained by Borrower's or Abel Anthony Zepeda's estates, or any successor, heir, devisee, or any personal representative.

**VERIFIED COMPLAINT - 6**

Plaintiff does not seek to foreclose the Tribe's interest as lessor, but it does seek to extinguish any other interest, including the right to first refusal that the Tribe has already waived.

22.     There are no other liens or interest in real estate of record with the Bureau of Indian Affairs on the leasehold interest that is the subject of this action. *See* Exhibit E.

23.     All relevant requirements and conditions prescribed in applicable statutes, rules, and regulations, and the protections within the lease, have been complied with.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor as follows:

A.  Judgment of foreclosure against the leasehold interest and the Borrower in the amount of $75,922.02 as of October 6, 2004, together with any additional sums advanced, costs expended herein, and interest accruing thereon.

B.  That a decree of foreclosure and sale be issued directing the foreclosure and sale of the real property leasehold interest subject to and described in the Deed of Trust (which is described herein), with redemption rights as provided by law and the Deed of Trust; that Plaintiff or any other party to this suit may become a purchaser at the sale of the real property leasehold interest; that the purchaser at the sale be issued a Certificate of Sale and immediately let into possession of the real property; and that at the termination of the redemption period the Marshal issue a Marshal's Deed to the purchaser for the real estate.

C.  To apply the proceeds from the sale as follows: (a) to the costs and expenses of sale; (b) to the payment of the costs and disbursements taxed in the action in which the sale is made; (c) to payment on the debt adjudged by the Court to be due; (d) to pay the surplus, if any, into the Court for the use of the Borrower or any person entitled thereto, subject to the order of the Court.

**VERIFIED COMPLAINT - 7**

D.  That all Defendants, together with each and every person or entity claiming under them or claiming any lien or encumbrance of any kind or character upon or against the real property subsequent in time or in priority, or both, to the liens of the Plaintiff's leasehold Deed of Trust, and all persons claiming to acquire any right, title, or interest in and to said real property or any part thereof subsequent to the filing in the Portland Title Plant of the BIA be barred and foreclosed of and from all rights, title, or interest in and to said property.

E.  For Plaintiff's costs and disbursements of this action.

F.  That Plaintiff be allowed to bid the debt due on the date of sale, with costs and disbursements taxed in the action in which the sale is made, and costs and expenses of the sale.

G.  For such other and further relief as may be just and equitable.

DATED this 31st day of May, 2018.

> BART M. DAVIS
> UNITED STATES ATTORNEY
> By:
>
> */s/ William M. Humphries*
> WILLIAM M. HUMPHRIES
> Assistant United States Attorney

**VERIFIED COMPLAINT - 8**

**VERIFICATION**

I, Krisa Johnson, hereby verify and declare under penalty of perjury that I am an employee of the Department of Housing and Urban Development; that I have read the foregoing Verified Complaint and know the contents thereof; that the matters contained in the Verified Complaint are true to my own knowledge, except that any matters herein stated to be alleged, on information and belief and as to those matters I believe them to be true.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 17th day of May, 2018.


*/s/ Krisa Johnson*
Krisa Johnson
Supervisory Loan Guarantee Specialist
Office of Loan Guarantee
Office of Native American Programs
U.S. Dept. of Housing & Urban Development
451 7th St. S.W., Room 4230
Washington, D.C.  20410

**VERIFIED COMPLAINT - 9**

# EXHIBIT A

Google

the Web    Archive Search Help

The Spokesman-Review - Jul 25, 2006
Browse this newspaper »
Browse all newspapers »    Page    22  of 69    Link to article


## ZEPEDA, Hilary (Goddard)
### (Age 41)

Passed away Thursday, July 20, 2006 from injuries in a car accident on Highway 95 north of Worley, ID. She was born September 16, 1964 at Spokane, WA to Ronald and Rose (Abraham) Goddard. She attended schools at DeSmet and Plummer, ID. She later attended Spokane Community College and received a nursing degree in 1997. Hilary had worked as a registered nurse at the Spokane Tribal Clinic at Wellpinit, Washington and later at the Benewah Medical Center in Plummer, Idaho. Hilary had worked as a registered nurse at the Spokane Tribal Clinic at Wellpinit, Washington and later at the Benewah Medical Center in Plummer, Idaho. Hilary lived with Raymond Andrew in Wellpinit, WA for 15 years. She returned to the DeSmet area in 2001. Hilary married Abel Zepeda at DeSmet, Idaho in 2001. The couple made their home in Worley, Idaho. She was a member of the Coeur d'Alene Tribe and Sacred Heart Catholic Church. Survivors include her husband Abel at the Worley home; two sons, Gabriel Andrew of Worley, ID and Raymond Andrew Jr. of Wellpinit, WA; her mother, Rose Goddard of DeSmet, ID; her former companion Raymond Andrew of Wellpinit; three sisters, Debbie Pierce of Worley, Rhonda Lozon of DeSmet, and Paulette Goddard of Worley; and one brother, Ronald Goddard of Worley. A Mass of Christian Burial will be held Thursday, July 27, 2006 at 10:00 am at the DeSmet Community Center at DeSmet, ID. Rosary service will be held Wednesday, July 26th at 7:00 pm at the Community Center. Father Thomas Connolly, S.J. will officiate at the services and burial will follow at the DeSmet Cemetery. *KRAMER FUNERAL HOME OF TEKOA, WA* is in charge of the arrangements.

OPEN HOUSE!!
Sunday July 23rd
1PM – 3PM ONLY!!!
725 SW Mies, Pullman
4 bdr, 2 ½ bath  2 car garage
Perfect Home!!!!!
MUST SELL !!!
FREE NEW Big Screen
HD TV w/purchase!!
Call (509)339-3394

Lease Option  Poor Credit
OK Numerous Properties
Avail  Sign a Note & Move In
24 Hr Recorded Message
866-379-0584 ext 602

BUY YOUR OWN HOME
Better than Renting
Interest Rate is still low
Princeton Realtors 466-0495


102 HOMES FOR SALE, NORTHWEST

Beautiful Brick Single level
2 bd + Den, 1.5 ba,
Sprinklers, Central A/C,
3 car garage plus shop
$191K ★ 2218 W Gordon
☎ (509) 998 2161

6205 N FOREST BLVD
3+ bed, 2 bath, 2car
gar, NEW KITCHEN,
www.spokanebyowner.com/163,
John 509-435-3017

6205 N Forest Blvd
3+ bed, 2 bath, 2 car gar
NEW KITCHEN
www.spokanebyowner.com/163


Delightful Cd'A h
5 bd/3ba  updated
new roof  2880sf  b
yard  quiet neighb
$289,900    208-65
Nice listers adolpha nels

120 HOMES FOR NORTH IDA

$189,000 2 YR PS
2ba, 2 car gar, ca,
open, gorg (208)6-
www.folki.com

125 HOMES WA

WE BUY HOUS
& LOTS Any condi
closures ok  Mem
509-220-436

129 HOMES NEW CONS

8 NEW CEDAR H
5models.  9 ceilin
wood  floors,  gran
more,  gorgeous,
5825
Windermere CDA

130 LOTS FOR WANTED

37'x150' lot in De
19K cash  420 E
220 4367 by o

132 MOBILE H ALE / WA



THE SPOKESMAN-REVIEW

⊖ Related articles

Get this newspaper

Flag this edition as unreadable

# EXHIBIT B

Case 2:18-cv-00240-DCN   Document 1-2   Filed 05/31/18   Page 2 of 2

## Abel Anthony Zepeda

Died: March 11, 2010
Location: Plummer, Idaho



J. Warren Funeral Services - Cole & Maud The Gardens Chapel

525 N Peart Rd
P.O. Box 10990
Casa Grande, AZ 85122
*jwarrenfuneral@jwarrenfuneral.com*
Tel. (520) 836-8041

# Tribute & Message From The Family

AK-CHIN — Abel Anthony Zepeda, 44, of Plummer, Idaho, died on March 11, 2010 in Plummer.

The wake will begin at 7 p.m. Friday at St. Francis Catholic Mission in Ak-Chin, with rosary recited at 8. Funeral Mass will be celebrated there at 7 a.m. Saturday. Burial will be in Ak-Chin Cemetery.

Mr. Zepeda was born on April 22, 1965 in Sacaton. He served in the Army and was a casino floor manager.

Survivors include his father, Armando Zepeda Sr. of Santa Rosa; three sisters, Virginia Zabawa of Maricopa, Amelia Zepeda of Randolph and Lori Allen of Maricopa; five brothers, Richard Zepeda of Sacaton, Roy Zepeda of Stanfield, Victor Zepeda of ChuiChu, Ruben Zepeda of Worley, Idaho, and Armando Zepeda Jr. of Maricopa; and two stepsons. He was preceded in death by his wife, Hillary; his mother, Angelina Zepeda; a sister, Marrianna Baptisto; and a brother, Danny Zepeda.

J. Warren Funeral Services, Cole & Maud The Gardens Chapel is in charge of arrangements.

Powered By
*tributes*

# EXHIBIT C

 9357

CNOT-3200-C-1

1465 

9/20

# NOTE

SEPTEMBER 11, 2001                    SANDPOINT                    IDAHO
[Date]                                          [City]                             [State]

9195 WEST BALD EAGLE LANE, WORLEY, ID 83876

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ******66,634.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO HOME MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.500      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST     day of each month beginning on NOVEMBER 01, 2001      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 01, 2031      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, INC., P.O. BOX 5137, DES MOINES, IA   503065137              or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ ****465.91        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT

 -5N (0005)              Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                      Initials:  HFG



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Hilary F Goddard_ (Seal)
HILARY F. GODDARD          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO HOME MORTGAGE, INC.
By _____
       Sandra R. Ahmad
       Assistant Secretary

# EXHIBIT D

Return To:
WELLS FARGO HOME MORTGAGE, INC.
3601 MINNESOTA DR. SUITE 200.
BLOOMINGTON, MN 55435 *attn. Rhonda*

*12550 SE 93rd #400*
*Clackamas OR 97015*

181-8238

Prepared By:
WELLS FARGO HOME MORTGAGE, INC.

12550 SE 93RD AVE, SUITE 400,
CLACKAMAS, OR 970150000

*I certify this to be a true and correct copy of the original.*
*EASYWAY ESCROW*

──────────[Space Above This Line For Recording Data]──────────

# DEED OF TRUST

▓▓1465

RECEIVED
2002 OCT -1  AM 7:59

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 11, 2001
together with all Riders to this document.
(B) "Borrower" is HILARY F. GODDARD , A SINGLE PERSON

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO HOME MORTGAGE, INC.

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF CALIFORNIA

IDAHO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3013 1/01

(VMP)-6(ID) (0005)

Page 1 of 15                    Initials: HFG  HFG

VMP MORTGAGE FORMS - (800)521-7291





181-8238

Lender's address is P.O. BOX 5137, DES MOINES, IA  503065137

Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is PIONEER TITLE COMPANY
8151 W. RIFLEMAN ST., BOISE, ID  83704

(E) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 11, 2001
The Note states that Borrower owes Lender SIXTY SIX THOUSAND SIX HUNDRED THIRTY FOUR
AND 00/100                                                                    Dollars
(U.S. $*****66,634.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than OCTOBER 01, 2031          .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify]   HUD 184 |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

181-8238

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**          of **KOOTENAI**                                                     :

        [Type of Recording Jurisdiction]                         [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION**

**THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.**
**TAX STATEMENTS SHOULD BE SENT TO:  WELLS FARGO HOME MORTGAGE, INC., P.O. BOX 5137, DES MOINES, IA  503065137**

Parcel ID Number: **N/A-EXEMPT**                    which currently has the address of
**9195 WEST BALD EAGLE LANE**                                              [Street]
**WORLEY**                                   [City], Idaho  **83876**        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(ID) (0005)                      Page 3 of 15                    Initials: HFG  HFG        Form 3013  1/01

 

181-8238

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

VMP®-6(ID) (0005)                          Page 4 of 15             Initials: *HFG  HFG*             Form 3013  1/01

1 8 1 - 8 2 3 8

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

181-8238

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

181-8238

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

181-8238

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

181-8238



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



181-8238

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 

181-8238

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

181-8238

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP®-6(ID) (0005)    Page 12 of 15    Initials: HFG   HFG    Form 3013   1/01

181-8238

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Area and Location of Property.** Either the Property is not more than 40 acres in area or the Property is located within an incorporated city or village.

181-8238 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Hilary F. Goddard* _____ (Seal)
                                 HILARY F. GODDARD              -Borrower

_____          *Hilary F. Goddard* (Seal)
                                                     -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

181-8238

E.   A sale of property subject to the Security Instrument without an assumption of the Security Instrument may be made if a new lease for the remaining term of the existing lease is granted.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants in this Rider for Section 184 Mortgage.

_____ (Seal)        *Hilary F Goddard* (Seal)
            -Borrower          HILARY F. GODDARD          -Borrower

_____ (Seal)        *Hilary F Goddard* (Seal)
            -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
            -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
            -Borrower                              -Borrower

NMFL# 0184 3/98                                    Page 2 of 2

181-8238

STATE OF IDAHO,                          ~~BONNER~~ County ss:

On this ~~11th~~ 18th       day of **SEPTEMBER, 2001**                          , before me,

a Notary Public in and for said county and state, personally appeared **HILARY F. GODDARD**

known or proved to me to be the person(s) who executed the foregoing instrument, and acknowledged to
me that he/she/they executed the same.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this
certificate first above written.

*Carol Sommerfeld*
Notary Public residing at:
*Sandpoint, Idaho*
3-1-2005

*Yvonne Nomee*
*notary public*
*My Commission Expires - 9-14-07*

VMP -6(ID) (0005)               Page 15 of 15          Initials: HFG HFG     Form 3013  1/01

181- 8238

Lot Number 19 of the Osprey Spirit II Housing Development at 9195 W. Bald Eagle Lane as described in the Plat of Osprey Spirit II, which is a lot of 32,917 square fee located in the NW ¼ of the NW ¼ and the NE ¼ of the NW ¼ of Sec. 25; T .47N, R.5W., B.M., on the Coeur d'Alene Indian Reservation within Kootenai County, Idaho, on trust lands of the Coeur d'Alene Indian Tribe.

181-8238

# RIDER FOR SECTION 184 MORTGAGE

THIS RIDER FOR SECTION 184 MORTGAGE is made this 11TH day of SEPTEMBER , 2001 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to WELLS FARGO HOME MORTGAGE, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at: 9195 WEST BALD EAGLE LANE, WORLEY, ID 83876

(Property Address)

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. The interests of the Borrower in the property described above were created by a lease agreement from Coeur d 'Alene Tribe 5/10/00 & assigned 6/20/01 as lessor dated 4/6/00, approved / . Any reference to the "Property" shall be construed as referring only to the interest of Borrower created by such lease or any replacement lease.

B. If the Security Instrument is assigned to the Secretary of Housing and Urban Development ("Secretary"), any foreclosure proceeding may take place in a tribal court, Federal district court, or other court of competent jurisdiction. Section 184 of the Housing and Community Development Act grants to any such court the jurisdiction to convey to the Secretary the remaining life of a lease on the property and to order eviction of the delinquent Borrower.

C. Any purchaser at foreclosure sale other than the Secretary must receive the written consent of the lessor or, if lessor is not an Indian tribe, the tribe of which lessor is a member. The purchaser shall receive a lease for the remaining term of the existing lease unless the tribe consents to an assumption of the existing lease.

D. This Security Instrument may be assumed, subject to credit approval by the Lender and the consent of the tribe to an assumption of the existing lease or the grant of the new lease. Assumption shall not cause any adjustment of the interest rate.

NMFL# 0184 3/98

Page 1 of 2

# EXHIBIT E

United States Department of the Interior
Bureau of Indian Affairs
Title Status Report

Report Certification Time and Date: 04/17/2012 02:21:28 PM
Requestor: WPOITRAS Date/Time: 04/17/2012 17:40:03

**Land Legal Description**

| Land Area | Land Area Name | Tract Number | LTRO | Region | Agency | Resources |
|---|---|---|---|---|---|---|
| 181 | COEUR D'ALENE | T 639 .5 | PORTLAND, OR | NORTHWEST REGIONAL OFFICE | COEUR D'ALENE | Both |

| Section | Township | Range | State | County | Meridian | Legal Description | Acres |
|---|---|---|---|---|---|---|---|
| 23 | 047.00N | 005.00W | IDAHO | KOOTENAI | Boise | NE NE | 40.000 |
| | DESCRIPTION REMARKS: EXCL COAL & OIL | | | | | | |
| 25 | 047.00N | 005.00W | IDAHO | KOOTENAI | Boise | LOT 99=N NW | 79.960 |
| | | | | | | LOT 99=NW NE | 40.160 |
| | DESCRIPTION REMARKS: EXCL COAL & OIL | | | | | | |
| | | | | | | TOTAL TRACT ACRES: | 160.120 |

**Title Status**

Tract 181 T 639 .5 is held by the United States of America in trust for the land owner(s) with trust interests and/or by the land owner(s) with restricted interests and/or fee simple interests, as listed in Appendix "A" attached to and incorporated in this Title Status Report.

The title to Tract 181 T 639 .5 is current, complete, correct, and without defect. Ownership is in unity and interests are owned in the following title status: trust.

The tract ownership is encumbered by the title documents as listed on Appendix "B" attached to and incorporated in this Title Status Report.

The following notes apply to this land title:

Physical Land Changes          PLAT OF OSPREY SPIRIT II HOUSING DEVELOPMENT RECORDED UNDER DOCUMENT 181-7849.

This report does not cover encroachments nor any other rights that might be disclosed by a physical inspection of the premises, nor questions of location or boundary that an accurate survey may disclose. This Report also does not cover encumbrances, including but not limited to irrigation charges, unpaid claims, not filed or recorded in this Land Titles and Records Office. This report does not state the current ownership of the interests owned in fee simple but states the ownership at the time the interest ceased to be held in trust or restricted ownership status.

This Title Status Report is a true and correct report of the status of title to the real estate described herein according to the official land records recorded and maintained in this office.

_____
Manager

 

**Appendix "A"**

Effective Ownership as of 11/19/2004

| Tribe & Code | ID No. & DOB | Indian or Non-Indian | Title Status | Interest* | Class | Type | Number | SURNAME/FIRST NAME | AS ACQUIRED | CONVERTED TO LCD | DECIMAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ------------ OWNER ------------ | | | | | ---- DOCUMENT ---- | | | NAME ACQUIRED | FRACTION | AGGREGATE SHARE | AGGREGATE |
| 181 COEUR D'ALENE - ID | T181-30 | Tribe | Trust | All | Ord Tran | | 5387 | COEUR D'ALENE TRIBE | 1 1 | 1 1 | 1.0000000000 |

* "All" means the equitable beneficial interest and the
  legal title interest merged together.

|  | |
|---|---|
| IN TRUST: | 1 |
|  | 1  1.0000000000 |
| IN FEE: | 0 |
|  | 1  .0000000000 |
| TOTAL: | 1 |
|  | 1  1.0000000000 |



Appendix "B"

Ownership of Tract 181 T 639 .5 is encumbered by the following:

| Contract Type/Contractor Name | Contract Number | Contractor ID | Begin Date | Expiration Date | Leased Acres | Record Image# |
|---|---|---|---|---|---|---|
| RESIDENTIAL | 2000020748 | 181C000144 | 06/01/2007 | 09/30/2048 | .615 | SCANNED |
| JACKSON H. LOUIE | | | | | | |
| RESIDENTIAL | 2087980757 | 181C181517 | 12/11/2007 | 12/10/2057 | .670 | SCANNED |
| ZENO J. GARCIA | | | | | | |
| RESIDENTIAL | 2088290959 | 181C250017 | 01/08/2009 | 01/07/2059 | .320 | SCANNED |
| WALTER CAMPBELL | | | | | | |
| RESIDENTIAL | 20000S983A | 181C250024 | 09/11/1998 | 09/10/2048 | .320 | SCANNED |
| WILLARD SPOTTEDBLANKET | | | | | | |
| RESIDENTIAL | 2089991136 | 181C250028 | 08/01/2011 | 07/31/2036 | .680 | SCANNED |
| ALTHEA FORD | | | | | | |
| RESIDENTIAL | 2089011035 | 181C250046 | 12/01/2010 | 11/30/2035 | 1.000 | SCANNED |
| LAWRENCE SAXON | | | | | | |
| RESIDENTIAL | 2088911059 | 181C250059 | 01/01/2010 | 12/31/2059 | .670 | SCANNED |
| LOVINA VERONICA LOUIE | | | | | | |
| RESIDENTIAL | 2088921059 | 181C250060 | 01/01/2010 | 12/31/2059 | .670 | SCANNED |
| MABEL ROSE WHALEY | | | | | | |
| RESIDENTIAL | 2089241060 | 181C250069 | 04/01/2010 | 03/31/2060 | .660 | SCANNED |
| MICHAEL M MATT | | | | | | |
| RESIDENTIAL | 2089281060 | 181C250070 | 04/01/2010 | 03/31/2060 | .720 | SCANNED |
| SANTINO J ALDRICH | | | | | | |
| RESIDENTIAL | 20000S0011 | 181C250078 | 05/13/2005 | 05/12/2055 | .567 | SCANNED |
| JONITA O PERRY | | | | | | |
| RESIDENTIAL | 2089461060 | 181C250079 | 06/01/2010 | 05/31/2060 | .710 | SCANNED |
| TIMOTHY I WILLIAMS | | | | | | |
| RESIDENTIAL | 20000S0014 | 181C250084 | 07/11/2005 | 07/10/2055 | .320 | SCANNED |
| DAN B GARCIA JR | | | | | | |
| RESIDENTIAL | 2089931161 | 181C250094 | 04/01/2011 | 03/31/2061 | .710 | SCANNED |
| RYAN D SEIM | | | | | | |
| RESIDENTIAL | 2089111136 | 181C250101 | 04/01/2011 | 03/31/2036 | 1.000 | SCANNED |
| NELLIE MICHAEL | | | | | | |
| RESIDENTIAL | 2088300934 | 181C250116 | 02/05/2009 | 02/04/2034 | .320 | SCANNED |
| ROBIN HOLT | | | | | | |

| Type of Encumbrance | Encumbrance Holder | Expiration Date | Document Number | Description and Explanation |
|---|---|---|---|---|
| ASSIGNMENT | SECRETARY OF HOUSING AND URBAN DEVELOPMENT | | 9179 | ASSIGNMENT OF DEED OF TRUST DOC NUMBER 181-8238 MADE BY SECRETARY OF HOUSING AND URBAN DEVELOPMENT INCLUDED SECTION 184 RIDER DATED 4/05/2012. |
| MORTGAGE | WELLS FARGO BANK | | 9030 | DEED OF TRUST OF A LEASEHOLD INTEREST ONLY CONTRACT # 2087980757, MADE BY ZENO J GARCIA TO SECURE NOTE IN THE AMOUNT OF $40,513.00 (INCLUDES RIDER FOR SECTION 184 MORTGAGE) APPD 6/19/08. |
| MORTGAGE | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC MERS | 05/31/2040 | 9084 | DEED OF TRUST RESIDENTIAL LEASE #2088921059, MADE BY MABEL ROSE WHALEY, TO SECURE NOTE IN THE AMOUNT OF $162,156.00 FOR A TERM OF 30 YEARS, BEGINNING ON 6/1/2010. INCLUDES SECTION 184 RIDER, APPROVED 5/13/2010 |
| MORTGAGE | WELLS FARGO BANK, N.A. | | 9133 | DEED OF TRUST OF A LEASEHOLD INTEREST ONLY, LEASE DOCUMENT NO 2089461060, TO SECURE A NOTE IN THE AMOUNT OF $85,000.00.  MADE BY TIMOTHY I WILLIAMS AND TIFFANY WILLIAMS, HUSBAND AND WIFE, APPROVED 6/22/2011. INCLUDES RIDER FOR SECTION 184 MORTGAGE. |
| MORTGAGE | WELLS FARGO BANK N A | | 9159 | DEED OF TRUST OF A LEASEHOLD INTEREST ONLY DOCUMENT NUMBER 9087 MADE BY MICHAEL M MATT TO SECURE NOTE IN THE AMOUNT OF $131,330.00  INCLUDES SECTION 184 RIDER APPROVED 11/8/2011. |
| AGREEMENTS (OTHER) | COEUR D' ALENE TRIBAL HOUSING AUTHORITY | | 9160 | SUBORDINATION AGREEMENT OF A LEASEHOLD INTEREST ONLY LEASE NO 2089241060, MADE BY MICHAEL M MATT APPROVED 10/12/2011 TO SECURE NOTE IN THE AMOUNT OF $131,330.00 XREF 181-9087 |
| MORTGAGE | WELLS FARGO BANK N A | PERPETUAL | 9161 | DEED OF TRUST OF A LEASEHOLD INTEREST ONLY LEASE #2089281060 181-9096 & 9099 MADE BY SANTINO J ALDRICH TO SECURE NOTE IN THE AMOUNT OF $150,449.00 APPROVED 11/8/2011 |
| AGREEMENTS (OTHER) | COEUR D' ALENE TRIBAL HOUSING AUTHORITY | PERPETUAL | 9162 | SUBORDINATE AGREEMENT OF A LEASEHOLD INTEREST ONLY LEASE # 2089281060 MADE BY SANTINO ALDRICH APPROVED 10/19/2011 TO SECURE NOTE IN THE AMOUNT OF $150,449.00 XREF DOCS 9096 AND 9099 |
| MORTGAGE | WELLS FARGO BANK N A | | 9167 | DEED OF TRUST IN THE NATURE OF A LEASEHOLD MORTGAGE MADE BY LOVINA V LOUIE AND DUANE H GARVAIS, HUSBAND AND WIFE, LEASE NO. 181-2088911059, APPROVED 11/10/2011. INCLUDES RIDER FOR SECTION 184. |
| OTHER SPECIAL AUTHORITY | COEUR D ALENE TRIBE | PERPETUAL | 9074 | QUITCLAIM DEED DTD 2/10/2010, FROM COEUR D'ALENE TRIBE TO LOVINA VERONICA LOUIE CONVEYING AND RELEASING ALL INTEREST IN THE N1/2 OF THE  N1/2 LOT 29 OSPREY SUBDIVISION. |
| MORTGAGE | STERLING SAVINGS BANK | | 9075 | DEED OF TRUST FOR A LEASEHOLD INTEREST ONLY, LEASE NO. 2088911059,DOCUMENT NUMBER 181-9076. MADE BY LOVINA VERONICA LOUIE, TO SECURE A NOTE IN THE AMOUNT OF $165,311.00, APPROVED 2/17/2010. INCLUDES RIDER FOR SECTION 184. |
| MORTGAGE | COEUR D' ALENE TRIBAL HOUSING AUTHORITY | | 9076 | SUBORDINATE MORTGAGE OF A LEASEHOLD INTEREST ONLY (LEASE NO. 2088911059) MADE BY LOVINA VERONICA LOUIE,  APPROVED FEBRUARY 17, 2010, TO SECURE A NOTE IN THE AMOUNT OF $5,000.00. |
| MORTGAGE | WELLS FARGO BANK, N.A. | | 9123 | DEED OF TRUST FOR A LEASEHOLD INTEREST ONLY, LEASE NO 20000S983A, MADE BY WILLARD M SPOTTED BLANKET, A MARRIED PERSON, TO SECURE A NOTE IN THE AMOUNT OF $85,892.00, APPROVED 4/18/2011.  INCLUDES RIDER FOR SECTION 184 MORTGAGE. |
| CERTIFICATE OF SURVEY | BLM | | 9143 | BLM DEPENDENT RESURVEY APPROVED FEBRUARY 28, 2007, CHANGES THE LEGAL DESCRIPTION AND/OR ACREAGE OF SUBJECT PROPERTY.  SEE DOCUMENT FOR PARTICULARS. |
| HOMESITE LEASE | CHRISTA HOWARD | 11/28/2056 | 8910 | RESIDENTIAL LOT LEASE NO OS00-20 FOR A TERM OF 50 YEARS BEGINNING ON 11/29/2006, APPROVED 12/8/2006. |



Appendix "B"

| Type of Encumbrance | Encumbrance Holder | Expiration Date | Document Number | Description and Explanation |
|---|---|---|---|---|
| ASSIGNMENT | NOMEE PHILOMENA M | 05/11/2048 | 8487 | HOMESITE LEASE NO: OS-98-1,LOT 5, BEGINNING 5/26/2005; APPROVED 5/26/2005. (X-REFERENCE DOC # 181-7845) |
| HOMESITE LEASE | SAXON LAWRENCE | 05/22/2055 | 8489 | HOMESITE LEASE # OS00-11 FOR LOT 10, FOR A TERM OF 50 YEARS, BEGINNING 5/13/2005, APPROVED 1/19/2007. |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | PERPETUAL | 8490 | DEED OF TRUST, IN THE NATURE OF A MORTGAGE, AS TO LEASEHOLD INTEREST ONLY, MADE BY AGNES Y. NOMEE & SAMUEL L. ELI, BOTH SINGLE PERSONS, TO  SECURE NOTE IN THE AMOUNT OF $62,310.00, APPD ON 5-27-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE)X-REF-181-7873 |
| ASSIGNMENT | CHERYL CAMPBELL | 10/29/2048 | 8488 | ASSIGNMENT OF LEASE NO OS 98-16, OSPREY SPIRIT II HOUSING DEVELOPMENT, DOCUMENT NO 181-7874, APPROVED 5/26/2005. |
| MORTGAGE | WELLS FARGO BANK | 02/01/2037 | 9061 | DEED OF TRUST, FOR A LEASEHOLD INTEREST ONLY, LEASE DOCUMENT NUMBER 181-8831, MADE BY HEIDI TWOTEETH AND JAMES TWOTEETH, HUSBAND AND WIFE, TO SECURE A NOTE IN THE AMOUNT OF 88,985.00, APPROVED 1/19/2007. INCLUDES HUD 184 RIDER CONSTRUCTION LOAN RIDER. |
| AGREEMENTS (OTHER) | WELLS FARGO BANK, N.A. | | 9173 | SUBORDINATION AGREEMENT, COEUR D'ALENE TRIBAL HOUSING AUTHORITY SUBORDINATES LEASEHOLD MORTGAGE DOC NO 181-9076, (REFERENCE LEASE NO 181-2088911059) TO WELLS FARGO BANK, N.A. LIEN IN THE AMOUNT OF $141,050.00, DATED 10/19/2011. |
| MORTGAGE | COEUR D'ALENE TRIBAL H A | | 9098 | SECOND MORTGAGE OF A LEASEHOLD INTEREST ONLY, LEASE NO 2089241060. MADE BY MICHAEL M MATT, TO SECURE A NOTE IN THE AMOUNT OF $4,000.00, APPROVED 6/09/2010 |
| MORTGAGE | COEUR D'ALENE TRIBAL H A | | 9099 | SECOND MORTGAGE OF A LEASEHOLD INTEREST ONLY, LEASE NO 2089281060. MADE BY SANTINO ALDRICH, TO SECURE A NOTE IN THE AMOUNT OF $4,000.00, APPROVED 6/09/2010. |
| MORTGAGE | WELLS FARGO BANK N A | | 9087 | DEED OF TRUST OF A LEASEHOLD INTEREST ONLY LEASE # 2089241060 X REF 9098  MADE BY MICHAEL M MATT IN THE AMOUNT OF $131,199.00 FOR A TERM OF 30 YEARS BEGINNING ON 5/11/2010, INCLUDES 184 RIDER, APPROVED 5/11/2010. |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8455 | DEED OF TRUST IN THE NATURE OF A MORTGAGE FOR A LEASEHOLD INTEREST ONLY, LEASE DOC. NO. 181-7858, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A NOTE IN THE AMOUNT OF $78,509.00, APPROVED ON 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8458 | DEED OF TRUST IN THE NATURE OF A MORTGAGE OF A LEASEHOLD INTEREST ONLY, LEASE DOC # 181-7875, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A NOTE IN THE AMOUNT OF $59,701.00, APPROVED 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8459 | DEED OF TRUST IN THE NATURE OF A MORTGAGE FOR A LEASEHOLD INTEREST ONLY, LEASE DOC. # 181-7860, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A  NOTE IN THE AMOUNT OF $47,538.00, APPROVED 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8460 | DEED OF TRUST IN THE NATURE OF A MORTGAGE FOR A LEASEHOLD INTEREST ONLY, LEASE DOC. # 181-7871, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A NOTE IN THE AMOUNT OF $65,515.00, APPROVED ON 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8462 | DEED OF TRUST IN THE NATURE OF A MORTGAGE AS TO A LEASEHOLD INTEREST ONLY, LEASE DOC. # 181 181-7854, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A NOTE IN THE AMOUNT OF $58,135.00, APPROVED ON 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8463 | DEED OF TRUST IN THE NATURE OF A MORTGAGE AS TO A LEASEHOLD INTEREST ONLY, LEASE DOC. # 181-7841, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A NOTE IN THE AMOUNT OF $37,039.00, APPROVED 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8464 | DEED OF TRUST IN THE NATURE OF A MORTGAGE AS TO A LEASEHOLD INTEREST ONLY, LEASE DOC. # 181-7842, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A  NOTE IN THE AMOUNT OF $58,564.00, APPROVED ON 2-22-2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8465 | DEED OF TRUST IN THE NATURE OF A MORTGAGE AS TO A LEASEHOLD INTEREST ONLY, LEASE DOC. # 181-7856, MADE BY THE COEUR D'ALENE TRIBE, TO SECURE A NOTE IN THE AMOUNT OF $62,954.00, APPROVED ON 2-22-2005. (INCLUDES RIDER FOR A SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8500 | DEED OF TRUST, MADE BY PHILOMENA M. NOMEE, A SINGLE PERSON. APPROVED 5-31-2005,DOCUMENT NUMBERS 181-7845 AND 181- 8417 TO SECURE NOTE IN THE AMOUNT OF $33,815.00 INCLUDED SECTION 184 RIDER. |
| HOMESITE LEASE | JAMES TWOTEETH | 07/20/2054 | 8831 | LEASE NO. OS 00-7 FOR A TERM OF FIFTY (50) YEARS, BEGINNING ON 07/21/2004, APPROVED 07/21/2004. |
| HOMESITE LEASE | RONALD TORPEY III | 08/25/2053 | 8832 | LEASE NO.OS 00-6 FOR A TERM OF FIFTY(50) YEARS, BEGINNING ON 08/26/2003, APPROVED ON 10/07/2003. |
| HOMESITE LEASE | RAVEN C. GEORGE | 11/05/2053 | 8833 | LEASE NO. OS 00-5 FOR A TERM OF FIFTY (50) YEARS, BEGINNING ON 11/06/2003, APPROVED 11/06/2003. |
| HOMESITE LEASE | WILLIAM WEEMS | 06/15/2054 | 8834 | LEASE NO. OS 00-8 FOR A TERM OF FIFTY (50) YEARS, BEGINNING ON 06/16/2004, APPROVED 06/23/2004. |
| MORTGAGE | WELLS FARGO FINANCIAL NATIONAL BANK | | 8442 | DEED OF TRUST OF A LEASEHOLD INTEREST ONLY, LEASE DOC. NO. 181-8112, MADE BY JOSEPH E PLUFF, TO SECURE NOTE IN THE AMOUNT OF $62,764.00, APPROVED 1/18/2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE). |
| MORTGAGE | WELLS FARGO BANK | | 8573 | DEED OF TRUST IN THE NATURE OF A MORTGAGE FOR LEASE NO OS 98-16, DOC NO 181-7874, MADE BY CHERLY L CAMPBELL, TO SECURE A NOTE IN THE AMOUNT OF $64,438.00 APPROVED 5/26/2005. (INCLUDES RIDER FOR SECTION 184 MORTGAGE) |
| MORTGAGE | WELLS FARGO BANK | | 8851 | DEED OF TRUST MADE BY LAWRENCE SAXON TO SECURE NOTE IN THE AMOUNT OF $117,341.00, APPROVED 11/30/2006. (INCLUDES RIDER FOR SECTION 184 MORTGAGE). |
| MORTGAGE | WELLS FARGO BANK | PERPETUAL | 8762 | DEED OF TRUST MADE BY DAN D GARCIA JR TO SECURE NOTE IN THE AMOUNT OF $67,365.00 APPROVED 7/11/2005 (INCLUDES SECTION 184 RIDER). |

Appendix "B"

| Type of Encumbrance | Encumbrance Holder | Expiration Date | Document Number | Description and Explanation |
|---|---|---|---|---|
| RIGHTS OF WAY | IDAHO NW RAILWAY CO | PERPETUAL | 5190 | R/W FOR RAILROAD & STATION GROUNDS, APPROVED 8-28-07, PURSUANT TO THE ACT OF 3-2-1899 (30 STAT.990). |
| RAILROAD | IDAHO NW RAILWAY CO | | 5192 | AMENDED R/W FOR RAILROAD & STATION GROUNDS, APPROVED 8/28/1907, PURSUANT TO THE ACT OF 6/21/1906 (34 STAT 325). |
| RIGHTS OF WAY | IDAHO NW RAILWAY CO | PERPETUAL | 5192 | AMENDED R/W FOR RAILROAD & STATION GROUNDS, APPROVED 2-18-10, PURSUANT TO THE ACT OF 6-21-06 (34 STAT. 325). |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 09/10/2047 | 7842 | OSPREY SPIRIT II HOUSING DEVELOPMENT SUBLEASE NO. OS 98-2A, DOC. NO. 181-7846, OF LOT 6 IN NENW OF SEC.25,T.47N.,R.5W., FOR A TERM OF 49 YEARS,11 MONTHS, 25 DAYS, BEGINNING 9/11/1998, APPROVED 9/16/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 09/05/2047 | 7844 | OSPREY SPIRIT II HOUSING DEVELOPMENT SUBLEASE NO. OS 98-4A, OF LOT 24, IN NENW OF SEC.25, T.47N,R.5W., FOR A TERM OF 49 YEARS,11 MONTHS, 25 DAYS, BEGINNING 9/11/1998, APPROVED 9/16/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 09/11/2048 | 7845 | OSPREY SPIRIT II HOUSING DEVELOPMENT LOT LEASE NO.OS 98-1, OF LOT 5 IN NENW OF SEC.25, T.47N., R.5W., FOR A TERM OF 50 YEARS, BEGINNING 9/11/1998, APPROVED 9/16/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 09/10/2048 | 7846 | OSPREY SPIRIT II HOUSING DEVELOPMENT LOT LEASE NO. OS 98-2, LOT 6, FOR A TERM OF 50 YEARS BEGINNING 9/11/1998, APPROVED 9/16/1998. (X-REFERENCE TO DOC. 181-7842) |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 09/10/2048 | 7847 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-3, LOT 14, FOR A TERM OF 50 YEARS, BEGINNING 9/11/1998, APPROVED 9/16/1998. (X-REFERENCE DOC. 181-7843) |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2048 | 7848 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-4, OF LOT 24, IN NENW OF SEC.25,T.47N.,R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| CERTIFICATE OF SURVEY | COEUR D' ALENE TRIBE | | 7849 | PLAT OF OSPREY SPIRIT II EXAMINED AND APPROVED FOR LEASING PURPOSES 5/22/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7852 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-7A, OF LOT 4 IN NENW OF SEC. 25, T47N., R5W., FOR A TERM OF 49 YEARS, 11 MONTHS, 25 DAYS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2048 | 7853 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OL 98-8, OF LOT 16 IN NENW OF SEC.25, T.47N.,R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7854 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-8A, OF LOT 16 IN NENW OF SEC.25, T.47N.,R.5W., FOR A TERM OF 49 YEARS, 11 MONTHS, 25 DAYS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2048 | 7855 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-9, OF LOT 13 IN NENW OF SEC. 25, T.47N.,R.5W., FOR A TERM OF 50 YEARS BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7856 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-9A, OF LOT 13 IN NENW OF SEC.25, T.47N.,R.5W., FOR A TERM OF 49 YEARS 11 MONTHS, 25 DAYS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2048 | 7857 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-10, OF LOT 21 IN NENW OF SEC.25, T.47N., R.5W., FOR A TERM OF 50 YEARS BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7858 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-10A, OF LOT 21 IN NENW OF SEC.25,T.47N.,R.5W., FOR A TERM OF 49 YEARS, 11 MONTHS, 25 DAYS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2048 | 7859 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-11, OF LOT 22 IN NENW, OF SEC.25, T.47N.,R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7860 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-11A, OF LOT 22 IN NENW OF SEC.25,T.47N.,R.5W., FOR A TERM OF 49 YEARS, 11 MONTHS, 25 DAYS, BEGINNING 10/2/1998, APPROVED 10/2/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2048 | 7861 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-6, OF LOT 3, IN NENW OF SEC.25, T.47N.,R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/2/1998, APPROVED 10/2/1998. (X-REFERENCE DOC.181-7850) |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7869 | OSPREY SPIRIT II HOUSING DEVELOPMENT SUBLEASE NO.OS 98-12A, OF LOT 1 IN NWNW AND NENW OF SEC.25, T.47N.,R.5W, FOR A TERM OF 49 YEARS, 11 MONTHS, 25 DAYS BEGINNING 10/2/1998, APPROVED 12/28/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/29/2048 | 7870 | OSPREY SPIRIT II HOUSING DEVELOPMENT LOT LEASE NO. OS 98-13, OF LOT 12, IN NENW OF SEC.25, T.47N., R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/30/1998, APPROVED 12/28/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7871 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-13A, DOC. NO. 181-7870, OF LOT 12 IN NENW OF SEC. 25, T.47N., R.5W., FOR A TERM OF 49 YEARS., 11 MONTHS, 25 DAYS, BEGINNING 10/2/1998, APPROVED 12/28/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/29/2048 | 7872 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-15, OF LOT 20, IN NWNW AND NENW OF SEC.25,T.47N., R.5W., FOR A TERM OF 50 YEARS BEGINNING 10/28/98, APPROVED 12/28/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7873 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-15A, DOC.181-7872, OF LOT 20, IN NWNW AND NENW OF SEC. 25,T.47N.,R.5W., FOR A TERM OF 49 YEARRS., 11 MONTHS., 25 DAYS, BEGINNING 10/2/1998, APPROVED 12/28/1998. |

## Appendix "B"

| Type of Encumbrance | Encumbrance Holder | Expiration Date | Document Number | Description and Explanation |
|---|---|---|---|---|
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/29/2048 | 7874 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-16, OF LOT 7 IN NENW OF SEC. 25,T.47N.,R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/30/1998, APPROVED 12/28/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/01/2047 | 7875 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL SUBLEASE NO. OS 98-16A, DOC. NO. 181-7874, OF LOT 7 IN NENW OF SEC.25, T.47N.,R.5W., FOR A TERM OF 49 YEARS., 11 MONTHS., 25 DAYS, BEGINNING 10/2/98, APPROVED 12/28/1998. |
| HOMESITE LEASE | C D A HOUSING AUTHORITY | 10/29/2048 | 7877 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 98-12 OF LOT 1 IN NNNW AND NENW OF SEC. 25,T.47N., R.5W., FOR A TERM OF 50 YEARS, BEGINNING 10/30/1998, APPROVED 12/28/1998. |
| MORTGAGE | NORWEST MORTGAGE, INC. | | 7879 | DEED OF TRUST IN THE NATURE OF A MORTGAGE OF A LEASEHOLD INTEREST ONLY, LEASE DOC. NO. 181-7869, MADE BY COEUR D' ALENE TRIBE, TO SECURE NOTE IN AMOUNT OF $54,762.00.00.   (INCLUDES   RIDER FOR SECTION 184   MORTGAGE). |
| MORTGAGE | NORWEST MORTGAGE, INC. | | 7914 | CORRECTION DEED OF TRUST, CHANGES PROPERTY ADDRESS AND LESSOR NAME ON RIDER FOR SECTION 184 MORTGAGE, APPROVED 12/1/1998. (RE-RECORDED SEE DEED OF TRUST DOC NO 181-7865) |
| HOMESITE LEASE | STACEY GARCIA | 04/11/2050 | 8065 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 00-1, AS TO LOT 17, FOR A TERM OF 50 YEARS, BEGINNING ON 4/12/2000, APPROVED 5/10/2000. |
| HOMESITE LEASE | TONY LADEAUX | 04/05/2050 | 8066 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS-00-2, AS TO LOT 19, FOR A TERM OF 50 YEARS, BEGINNING ON 4-6-2000, APPROVED ON 6-14-2000. |
| HOMESITE LEASE | THEODORE GAZE | 05/30/2050 | 8067 | OSPREY SPIRIT II HOUSING DEVELOPMENT RESIDENTIAL LOT LEASE NO. OS 00-3, ASTO LOT 25, FOR A TERM OF 50 YEARS, BEGINNING 5/31/2000, APPROVED 6/14/2000. |
| ASSIGNMENT | JOSEPH PLUFF | 04/11/2050 | 8112 | ASSIGNMENT OF RESIDENTIAL  LEASE NO. OS 00-1, DOC. NO. 181-8065, APPROVED 3/1/2001. |
| ASSIGNMENT | AGNES BRIEN & SAMUEL ELI | 10/01/2047 | 8134 | ASSIGNMENT OF RESIDENTIAL SUBLEASE NO. OS98-15A, DOCUMENT NO. 181-7873, APPROVED 5/24/2001, INCLUDES ASSUMPTION AGREEMENT 7472190 WITH  RELEASE OF LIABILITY DATED 12/6/2000. |
| ASSIGNMENT | HILLARY GODDARD | 04/05/2050 | 8237 | ASSIGNMENT OF RESIDENTIAL LEASE NO. OS 00-2, LEASE DOC NO 181-8066, APPROVED 9/24/2002. |
| MORTGAGE | WELLS FARGO HOME MORTGAGE | | 8238 | DEED OF TRUST IN THE NATURE OF A MORTGAGE, AS TO A LEASEHOLD INTEREST ONLY, DOCUMENT NUMBER 181-8066,MADE  BY HILLARY GODDARD TO SECURE NOTE IN THE AMOUNTOF $66,634.00. (INCLUDES RIDERS FOR SECTION 184 MORTGAGE & CONSTRUCTION LOAN) |
| COAL RESERVES (U.S.) | COEUR D'ALENE TRIBE | PERPETUAL | 13568959 | RESERVATION OF COAL & OIL TO U S, PURSUANT TO THE ACT OF 6/21/1906 (34 STAT 325). THE PORTLAND REGIONAL SOLICITOR'S OPINION OF 10/26/1967, HELD THAT THE COAL AND OIL WERE RETURNED TO COEUR D'ALENE TRIBAL OWNERSHIP BY THE ACT OF 5/19/1958 (72 STAT 121). |
| RIGHTS OF WAY | KOOTENAI COUNTY, IDAHO | PERPETUAL | 2769 | R/W FOR ROAD, APPROVED  8/29/1917, PURSUANT TO THE ACT OF 3/3/1901 (31 STAT 1058-1084). |

# EXHIBIT F

ASSIGNMENT OF RESIDENTIAL LOT LEASE

For good and valuable consideration, Toni LaDeaux (Assignor) does hereby assign all right, title and interest in the Residential Lot Lease Number OS 00-2 and Contract Number T181 8066 (Residential Lot Lease) approved on May 10, 2000 by the Superintendent of the Bureau of Indian Affairs and recorded in Area Office, Titles and Records Number for T181 8066 Lot 19 of the Osprey Spirit II Housing Development at 9195 W. Bald Eagle Lane Located in NWNW AND NENW OF SEC.25, T.47N, R.5W

The named Assignee hereby accepts this Assignment of Residential Lease and agrees to fulfill all obligations, conditions and covenants contained in the Residential Lease.

_____        10-20-01
Assignor                                                      Date

_____        6.20.01
Assignee                                                      Date

STATE OF IDAHO,
COUNTY OF Benewah
On this 20 day of June, 2001, before me, Terrilynn Stensgar a Notary Public in and for said county and state, personally appeared Toni LaDeaux _____ (Assignor) known or proved to me to be the person(s) who executed the foregoing instrument, and acknowledge to me that executed the same.
In witness whereof I have hereunto set thy hand and affixed my official seal the day and year in this certification first above written.

_____
Notary Public residing at: Tensed
My Commission Expires: March 23, 2004

STATE OF IDAHO,
COUNTY OF Benewah
On this 20 day of June, 2001, before me, Terrilynn Stensgar a Notary Public in and for said county and state, personally appeared Hilary Goddard _____ (Assignee) known or proved to me to be the person(s) who executed the foregoing instrument, and acknowledge to me that executed the same.
In witness whereof I have hereunto set thy hand and affixed my official seal the day and year in this certification first above written.

_____
Notary Public residing at: Tensed
My Commission Expires: March 23, 2004

As Lessor of Residential Lot Lease, Lease Number OS 00-2 and Contract Number T1818066____ (Residential Lot Lease), consent is given to the foregoing Assignment and release of the Assignor from Liability under the Residential Lot Lease.

Coeur d'Alene Tribe Representative _Francis A. SiJoh_ Date _6-20-01_

STATE OF IDAHO,
COUNTY OF _Benewah_
On this __20__ day of _June_,2001, before me, _Terrilynn Steinger_
a Notary Public in and for said county and state, personally appeared _Francis_
_SiJohn___ (Tribal Representative) known or proved to me to be the person(s)
who executed the foregoing instrument, and acknowledge to me that executed the same.
In witness whereof I have hereunto set thy hand and affixed my official seal the day and
year in this certification first above written.

_Terrilynn Steinger_
Notary Public residing at: _Tensed Id_
My Commission Expires: _March 23, 2004_

Bureau of Indian Affairs, approves the Assignment of Residential Lot Lease, Lease Number OS 00-2 and Contract Number T1818066 (Residential Lot Lease), and consent is given to the foregoing Assignment and release of the Assignor from Liability under the Residential Lot Lease.

Bureau of Indian Affairs Representative_____Date_____

STATE OF IDAHO,
COUNTY OF_____
On this _____day of_____,2001, before me, _____,
a Notary Public in and for said county and state, personally appeared _____
_____(BIA Representative) known or proved to me to be the person(s) who
executed the foregoing instrument, and acknowledge to me that executed the same.
In witness whereof I have hereunto set thy hand and affixed my official seal the day and
year in this certification first above written.

Notary Public residing at: _____
My Commission Expires: _____

OSPREY SPIRIT II/Lease (Form Approved November 5, 1999)
Lessor: Coeur d'Alene Tribe/Lessee: Tony LaDeaux

**181 8066**

# OSPREY SPIRIT II HOUSING DEVELOPMENT
### RESIDENTIAL LOT LEASE

**Lease No.: OS 00-2**

**Contract No.** _____

THIS LEASE, made and entered into between the **Coeur d'Alene Tribe hereafter designed as "LESSOR,"** and Tony LaDeaux **"LESSEE."** This lease is being entered into in accordance with and subject to the provisions of existing law and the regulations (25 CFR 162) which by reference are made a part hereof.

**WITNESSETH:**

1. SECRETARIAL APPROVAL. As used in this Lease, the term "Secretary" means the Secretary of the Interior or a duly authorized representative. This Lease is subject to the approval of the Secretary pursuant to the Act of August 9, 1955, 69 Stat. 539, as amended; 25 U.S.C. 415. This lease has been prescribed by the Secretary of Housing and Urban Development (HUD) pursuant to 24 CFR 955, which implements Section 184 of the Housing and Community Development Act (P.L. 102-550) in connection with HUD's issuance of a loan guarantee of a mortgage on the interest created by this Lease.

2. PREMISES. Lessor, as authorized by law and in accordance with a resolution adopted by the Coeur d'Alene Tribal Council on March 5, 1998 (Coeur d'Alene Tribe Resolution 68(98)), hereby leases to the Lessee all that tract or parcel of land situated on the Coeur d'Alene Indian Reservation, County of Kootenai, State of Idaho, and described as follows:

Lot Number 19 of the Osprey Spirit II Housing Development at 9195 W. Bald Eagle Lane as described in the 'Plat of Osprey Spirit II; which is a lot of 32,917 square feet located in the NW ¼ of the NW ¼ and the NE ¼ of the NW ¼ of Sec. 25; T.47N, R.5W, B. M., on the Coeur d'Alene Indian Reservation within Kootenai County, Idaho; on trust lands of the Coeur d'Alene Indian Tribe.

3. USE OF PREMISES. The object of this Lease is to enable the Lessee in obtaining financing to construct, improve and/or maintain a dwelling and related structures on the leased premises. The intent of the Tribe is that qualified tribal member(s) will use said premises as a principal residence and qualified tribal member(s) will obtain or assume loans resulting from the above referenced financing. Formal approval by HUD, National Office of Native American Programs, and Lender, of loans or loan assumptions by tribal member(s) for use of this parcel as a primary residence shall constitute compliance with these terms.

4. TERM. Pursuant to 25 U.S.C. Section 415, Lessee shall have and hold the premises for a term of fifty (50) years beginning on the effective date of this Lease. This Lease may not be terminated by either or both parties as long as the Lease and/or any

Page 1 of 5
Lease Number: OS 00-2____     Date Signed by Coeur d'Alene Tribe: 4/6/00

OSPREY SPIRIT II/Lease (Form Approved November 5, 1999)    **181  8066**
Lessor: Coeur d'Alene Tribe/Lessee: Tony LaDeaux

improvements on the premises, or any interest therein, are mortgaged or otherwise pledged as security for any loan in accordance with the provisions hereof, unless consent in writing to such termination is given by the Lender and, when a HUD loan guarantee is in force, by HUD. This Lease shall not be subject to any forfeiture or reversion and shall not be otherwise terminable, if such event would adversely affect any interest in the premises, including improvements thereon, acquired in accordance with the provisions hereof by the holder of any mortgage or other lien, or of any purchaser at a foreclosure sale under such mortgage (or lien) or under any conveyance given in lieu of foreclosure, or of any holder subsequent to such purchase. In the event HUD acquires a mortgage on the interest created by this Lease by assignment from a lender, the Lessor shall not terminate the Lease without the written consent of HUD as long as the mortgage is in force. During the term of this lease or any sub-lease, should the Lessor or Sublessor become the owner of the land it is hereby agreed that a merger of interest shall not occur, and the leasehold estate or subleasehold estate shall remain subject to any valid and subsisting mortgage or other security instrument.

5. RENT. The improvement of housing for thirty (30) families (more or less) is a public purpose of the Lessor. The consideration for this lease (1) is the said purpose, (2) at no cost to the Lessee, (3) unless the United States holds the property for the Lessee or the Lessee owns the property subject to "restriction against alienation" the extinguishment, hereby agreed to by Lessee, of any and all use rights heretofore held by Lessee in the premises, so that Lessee shall hereafter hold rights only by virtue of this lease, and (4) other good and valuable considerations, the receipt of which is hereby acknowledged by Lessor. It is agreed that there shall be no adjustment of the rent if the Lease is terminated before its term otherwise would expire or in the event that any part of the premises is taken by condemnation for highway or other public purposes.

6. IMPROVEMENTS. All buildings or other improvements now existing or hereafter constructed on the premises shall be the leasehold property of the Lessee during the term of this lease, including any extension or renewal thereof, or until such time as the lease is sub-let to the Coeur d'Alene Tribe. Upon termination or expiration of this Lease, the Lessee shall remove improvements only as directed by the Lessor. All other improvements shall revert to Lessor upon termination or expiration.

7. FEDERAL SUPERVISION. (a) Nothing contained in this Lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent, the lifting of restrictions on alienation, or otherwise during the term of the Lease; such termination, however, shall not serve to abrogate the lease. The owners of the land and the Lessee and his surety or sureties shall be notified of any such change in the status of the land. (b) No member of Congress or any delegate thereto shall be admitted to any share or part of this lease or to any benefit that may arise herefrom. (c) The Lessee agrees not to use or cause to be used any part of said premises for any unlawful conduct or purpose.

8. QUIET ENJOYMENT. Lessor agrees to defend the title to the premises and also agrees that Lessee and any successors in interest shall peaceably and quietly hold,

Page 2 of 5
Lease Number: OS 00-2___      Date Signed by Coeur d'Alene Tribe: _____

OSPREY SPIRIT II/Lease (Form Approved November 5, 1999)   181  8066
Lessor: Coeur d'Alene Tribe/Lessee: Tony LaDeaux

enjoy and occupy the premises for the duration of the Lease without any hindrance, interruption, ejection or molestation by Lessor or by any other persons whomever, except if the requirements of any part of this lease are not kept by the Lessee.

9. ASSIGNMENT. Except as otherwise provided herein, Lessee shall not assign this lease without the prior written consent of the Lessor and, if this Lease and/or any improvements on the premises are mortgaged or pledged as a security for a loan, without the written approval of the lender. Lessee may assign this lease or deliver possession of the premises, including any improvements thereon, to the lender or its successors in interest if Lessee(s) default(s) in any mortgage or other loan agreement for which the lease and/or improvements on the premises are pledged as security, and, in such event, the lender or its successors in interest may transfer this Lease or possession of the premises to a successor. Nothing in this Lease shall prevent the Lessee (individual borrower) from executing and recording a mortgage, declaration of trust and/or other security instrument as may be necessary to obtain financing for the construction and/or improvement of a dwelling and related structures, or shall prevent the mortgagee or other lender from foreclosing or instituting other appropriate proceedings under law in the event of default on any mortgage or other loan agreement by the Lessee (individual borrower). Except in cases involving loans for home construction or home improvement by a bank or other recognized lending institution, where no such consent or approval of Lessor shall be required, individual borrower may not execute a mortgage, declaration of trust or other security instrument pledging their interest in this Lease or any improvements on the instrument pledging their interest in this Lease or any improvements on the premises without the prior consent of Lessor and the approval of the Secretary.

Notwithstanding the provisions contained above, the following additional requirements shall be applicable to a Lease which secures a mortgage guaranteed or held by HUD.

(1) Lessee shall not sell or otherwise assign this lease without the prior written consent of the Coeur d'Alene Tribe.

(2) In the event HUD or Lender acquires the mortgage secured by this Lease, and subsequently acquires the Lease by foreclosure, or by the assignment of the Lease by Lessee (for which the approval of the Tribe is not required), then:

(a) HUD or Lender will notify the Tribe of the availability of the Lease for sale, the sale price and other terms of sale.

(b) If a purchaser is found, the Lease will be transferred by HUD or Lender to the purchaser, with the written consent and approval of the Tribe.

(c) If a purchaser cannot be found, HUD or Lender shall be entitled to sublease the leased premises to anyone wishing to sublease the same. The term of the initial sublease period and any succeeding periods shall not exceed one year each. A purchaser approved by the Tribe must wait where

Page 3 of 5
Lease Number: OS 00-2__        Date Signed by Coeur d'Alene Tribe: _____

OSPREY SPIRIT II/Lease (Form Approved November 5, 1999)    181 8066
Lessor: Coeur d'Alene Tribe/Lessee: Tony LaDeaux

the leased premises are subject until the expiration of any current sublease before occupying the premises.

(d) No mortgagee (except HUD or Lender as assignee of a mortgage) may obtain title to the interest created by this Lease without the prior written consent of the Tribe.

10. OPTION. In the event of default by the individual borrower on any mortgage or other loan agreement for which this Lease or any improvements on the premises are pledged as a security, Lessor and Lessee shall have the right of first refusal to acquire individual interest in the premises (subject to all valid liens and encumbrances) upon (a) payment of all sums then in arrears, and (b) either payment of the balance of the loan or assumption of the mortgage. Said right of first refusal may be exercised at any time within thirty (30) days after notice in writing from the lender of the Lessee's default, which notice shall be given before the lender invokes any other remedies provided under the mortgage or by law, and shall be exercised by notice in writing from the Lessor to the Lessee and the lender; provided, however that the Lessee shall have fifteen (15) days from the date of the latter notice to cure the default. The estate acquired by the Lessor through exercise of said right of first refusal shall not merge with any other estate or title held by the Tribe as long as mortgaged or otherwise pledged as security for any loan, and said estate shall remain subordinate to any valid and subsisting mortgage or other security instrument.

11. EFFECTIVE DATE. This Lease and all its terms and provisions shall be binding upon the heirs, successors, executors, administrators and assigns of the Lessee and any successor in interest to the Lessor, and shall take effect on _April 6, 2000_.

12. OBLIGATIONS TO THE UNITED STATES. It is understood and agreed that while the leased premises are in trust or restricted status, all of the Lessee's obligations under this lease, and the obligation of his sureties, are to the United States as well as to the owner of the land.

Coeur d'Alene Tribe, LESSOR
ATTEST:

_____
(Authorized Official)

_____, LESSEE

_____
(Lessee)

_____, WITNESS

Page 4 of 5
Lease Number: OS 00-2___    Date Signed by Coeur d'Alene Tribe: _____

OSPREY SPIRIT II/Lease (Form Approved November 5, 1999)
Lessor: Coeur d'Alene Tribe/Lessee: Tony LaDeaux

181  8066

DATE: 5-10-2000

APPROVED:

*Michael Morgan*
(Authorized Official)
Bureau of Indian Affairs

RECEIVED OR FILED
BUREAU OF INDIAN AFFAIRS

00 MAY 19  AM 9: 19

BRANCH OF REALTY
TITLES & RECORDS
SECTION

Page 5 of 5
Lease Number: OS 00-2___        Date Signed by Coeur d'Alene Tribe: 4/6/00

# EXHIBIT G

  181-9179

Wells Fargo Home Mortgage
One Home Campus
Des Moines, IA 50328
Attn: Kelly Richards
Mac X2303-048

Prepared by: Kelly Richards

\*          \*

(Space above this line for county recorder use only)

## ASSIGNMENT OF DEED OF TRUST

For value received, **Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc.**, herein "Assignor", whose address is One Home Campus, Des Moines, IA 50328, the undersigned hereby grants, assigns, and transfers to:

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
451 7th Street SW, Room 5143, Washington, DC 20410

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust, herein "Security Instrument" executed by Hillary F. Goddard, A single Person, dated September 11, 2001, in the amount of $66,634.00 and given to Wells Fargo Home Mortgage, Inc., and recorded on October 01, 2002 as Document or Instrument Number 181-8238 and/or in Book n/a, Page n/a, of Official Records in the Recorder office of the Bureau of Indian Affairs, Northwest Regional Office, County, Idaho, describing land therein as:

| | |
|---|---|
| **Property Address:** | 9195 West Bald Eagle Lane, Lot # 19, Worley, Idaho 83876 |
| **Parcel ID #:** | n/a |
| **Legal Description:** | **See Attached** |

Signed this _____4/5/12_____.

Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc.

TINA FELICE
Vice President Loan Documentation

Vice President Loan Documentation

## IDAHO ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF IOWA                        }
                                     }
COUNTY OF POLK                       }

On this ___4/5/12___ before me, _____ personally appeared:
_____, Vice President Loan Documentation, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ANGELA HENSCHEID
Commission Number 762522
My Commission Expires
April 9, 2013

Notary: _____
My Commission Expires: _____4/9/13_____

  181-9179

**Legal Description**

Lot Number 19 of the Osprey Spirit II Housing Development at 9195 W. Bald Eagle Lane as described in the Plat of Osprey Spirit II, which is a lot of 32,917 square fee located in the NW 1/4 of the NW 1/4 and the NE 1/4 of the NW 1/4 of Sec. 25; T .47N, R.5W., B.M., on the Coeur d'Alene Indian Reservation within Kootenai County, Idaho, on trust lands of the Coeur d'Alene Indian Tribe.

# EXHIBIT H



Wells Fargo Home Mortgage
P.O. Box 9039
Temecula, Ca 92589-9039

**2218662405**

May 03, 2009

1349/472DAY30/ID

HILARY F GODDARD
9195 W BALD EAGLE LN
WORLEY, ID 83876-

Dear Borrower(s):                                            RE: Loan Number████9357

Our records indicate that your loan is in default. Unless the payments on your loan can be brought current by June 02, 2009, it will become necessary to accelerate your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust. The total delinquency against your account as of today's date is as follows:

| | | |
|---|---|---:|
| Past Due Payments | $ | 1,709.73 |
| Late Charge Balance | $ | 44.64 |
| Other Fees | $ | 15.00 |
| Suspense Balance | -$ | 0.00 |
| **Total Delinquency as of May 03, 2009** | $ | **1,769.37** |
| Payments due in next 30 days | $ | 569.91 |
| **Total due to cure default and bring loan current as of June 02, 2009** | $ | **2,339.28** |

Your failure to pay this delinquency, plus additional payments and fees that may become due, will result in the acceleration of your Mortgage Note. Once acceleration has occurred, a foreclosure action, or any other remedy permitted under the terms of your Mortgage or Deed of Trust, may be initiated.

You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration. However, any future negotiations attempting to reinstate your loan or any payment of less than the full amount due shall not constitute Wells Fargo Bank, N.A.'s waiver of the acceleration unless agreed to, in writing, by Wells Fargo Bank, N.A. and may be returned. If foreclosure is initiated, you will have the right to refute the existence of a default or offer any other defense to acceleration you may deem appropriate. You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

To avoid the possibility of acceleration you must pay:

$1,769.37 By May 31, 2009, 2:00 P.M. Central Time or
$2,339.28 By June 02, 2009 2:00 P.M. Central Time,

in CERTIFIED funds, to Wells Fargo Home Mortgage, 1 Home Campus, X2302-04A, Des Moines, IA  50328. If funds are not received by the above stated time, we will proceed with acceleration.

We are required by Federal Law to notify you of the availability of government approved home ownership counseling

1349.472.DAY30.ID.0

agencies designed to help homeowners avoid losing their home.  To obtain a list of approved counseling agencies for your state please call 1-800-569-4287.  We urge you to give this matter your immediate attention.

If you would like to discuss the present condition of your loan, or if we can be of further assistance, please call our Loan Service Representatives at 1-800-551-9808, Monday through Friday from 8:00 a.m. to 8:00 p.m. Central Time.  This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its rights as against the property.

Sincerely,

Wells Fargo Home Mortgage
Default Management Department

# EXHIBIT I

 **U.S. De_____ment of Housing and Urban Deve_____ment**
451 7th Street, SW, Room 5143
Washington, DC 20410-0001

**OFFICE OF THE ASSISTANT SECRETARY**
**FOR PUBLIC AND INDIAN HOUSING**

**NATIONAL OFFICE OF NATIVE**
**AMERICAN PROGRAMS**

July 9, 2014

Coeur D'Alene
Tribal Chairperson:  Chief J. Allen
PO BOX 267
Plummer, ID 83851

RE:  Section 184 Case No.  161-011465
     Residential Lease
     9195 W. Bald Eagle Lane
     Worley, ID 83876

Dear Executive Director:

Notice of Lessor Right of First Refusal

You are hereby notified that the above – referenced loan number remains in default. As you know under Lease No. 0S 00-2, Reservation No. 181 Tract No. T639.5 , the Coeur D'Alene tribe, as lessor, has the right of first refusal to acquire the lessee's interest in the property (subject to all valid liens and encumbrances) upon (a) payment of all sums in arrears.

In order to exercise the right of first refusal, you must perform one of the following within thirty (30) days of this notice or on/or before 08/03/2014.

1.  Remit the total balance due on the loan. The total balance due if received on/or before 08/03/2012, is **$75,922.02.**

If you do provide the lessee and us a written notice of your desire to exercise the right of first refusal, Hilary Goddard (Zepeda), as lessee shall have fifteen (15) days from the date of such notice to cure the default paying the loan in full.

In the event that the Coeur D'Alene tribe fails to exercise their right of the first refusal in accordance with that set forth above, HUD/The office of Native American Programs, may invoke remedies provided by the mortgage or by applicable law.

If you have any questions regarding this matter, please feel free to contact us at;

Sincerely,

*Thomas C. Wright*

Thomas C. Wright
Director, Office of Native American Programs



Cc:

Coeur D'Alene
Tribal Chairperson: Chief J. Allen
PO BOX 267
Plummer, ID 83851

Coeur D'Alene
Chief J. Allen
PO BOX 267
Plummer, ID 83851

Hilary Goddard (Zepeda)
9195 W. Bald Eagle Lane
Worley, ID 83876

US Department of Housing and Urban Development
Office of Native American Programs
Attention: Thelma Y. Pillay
451 7th Street, SW – Room 5143
Washington, DC 20410

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original Proceeding    ☐ 2  Removed from State Court    ☐ 3  Remanded from Appellate Court    ☐ 4  Reinstated or Reopened    ☐ 5  Transferred from Another District *(specify)*    ☐ 6  Multidistrict Litigation - Transfer    ☐ 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☐No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                            *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td align="center"><em>Plaintiff(s)</em></td><td>)</td><td></td></tr>
<tr><td align="center">v.</td><td>)</td><td>Civil Action No.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td align="center"><em>Defendant(s)</em></td><td>)</td><td></td></tr>
</table>

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                                            *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| _____ <br> *Plaintiff(s)* <br><br> v. <br><br> _____ <br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
                                                                                                      .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: